ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| LUCIANO ROMAN CHICO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE HACIENDA, NEGOCIADO DE IMPUESTO AL CONSUMO<br><br>Recurrido | **KLRA202300337** | *REVISIÓN ADMINISTRATIVA* procedente de San Juan<br><br>Caso Núm.: 2021-NMA-343<br><br>Sobre: Violaciones y multas bajo la sección 3050.03 del Código de Rentas Internas |

Panel integrado por su presidente, el Juez Sánchez Ramos,[1] el Juez Bonilla Ortiz y el Juez Pagán Ocasio.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 23 de enero de 2024.

Comparece ante este foro el Sr. Luciano Román Chico (señor Román o "el recurrente"), y solicita que revoquemos una *Resolución* emitida por la Secretaría de Procedimientos Adjudicativos del Departamento de Hacienda, notificada el 13 de junio de 2023. Mediante el referido dictamen, determinó que el recurrente debía pagar una multa administrativa por la cantidad de $7,000.00 conforme al Código de Rentas Internas de Puerto Rico de 2011, Ley Núm. 1-2011, según enmendada al 19 de septiembre de 2014, 13 LPRA sec. 30011, *et seq.*

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** el dictamen recurrido.

### I.

El 4 de diciembre de 2021, agentes del Negociado de Rentas Internas del Departamento de Hacienda (Negociado

---

[1] En virtud de la Orden Administrativa DJ 2022-099D, se designa al Hon. Roberto Sánchez Ramos en sustitución de la Hon. Olga E. Birriel Cardona.

Número Identificador

SEN2024 _____

o "parte recurrida") se presentaron en el "Colmado El Mango", propiedad del recurrente, para realizar una inspección. Como resultado, el 4 de diciembre de 2021, los agentes del Negociado le notificaron al señor Román el Modelo SC 2327 sobre la *Inspección de Negocio-Notificación de Violaciones y Multas Subtítulos C, E y F*.[2] En dicho documento identificaron las violaciones y las multas encontradas en la propiedad, en específico: máquinas de entretenimiento manipuladas por monedas o fichas, sin pagar los derechos de licencia correspondientes; bebidas alcohólicas que no habían pagado impuestos; bebidas mezcladas, alteradas o diluidas que no estaban acorde con la descripción de la etiqueta; bebidas sin rotulación de impuesto pagado, entre otros. El total de la multa ascendía a $2,500.00.

Posteriormente, el 9 de diciembre de 2021, el Área de Rentas Internas del Departamento de Hacienda, le notificó al recurrente el Modelo SC 2931 sobre *Notificación de Multas Administrativas*.[3] Explicaba que le habían impuesto una multa al establecimiento por la cantidad de $7,000.00, al haber incurrido en una violación a la Sección 3050.03 del Código de Rentas Internas de 2011. Esto, debido a que estaba operando cuatro o más máquinas de artefactos de pasatiempo manipulados con monedas o fichas, sin el pago de derechos de licencias.

En desacuerdo, el 28 de diciembre de 2021, el recurrente presentó una *Querella Administrativa*.[4] En esencia, alegó que la multa es nula al no haberse

---

[2] *Inspección de Negocio-Notificación de Violaciones y Multas Subtítulos C, E y F*, anejo II, págs. 7-8 del apéndice del recurso.
[3] *Notificación de Multas Administrativas*, anejo I, págs 1-2 del apéndice del *Escrito en Cumplimiento de Resolución*.
[4] *Querella*, anejo III, págs. 9-10 del apéndice de recurso.

notificado adecuadamente la cuantía, puesto que, en todo caso debió ser por la cantidad de $500.00 por cada violación, y no de $7,000.00. A su vez, impugnó la multa por la suma de $2,000.00 bajo las secciones 6045.03(g); 6045.03(j)(1)(A); 6045.03(j)(1)(B); y 503.05(b)(2) del Código de Rentas Internas, por alegadamente tener bebidas alcohólicas de las cuales no pagó impuestos, estaban mezcladas y sin rotular.

Por su parte, el 10 de marzo de 2022, el Negociado presentó *Contestación a Querella / Multa por Tercera Ocasión en Violación a la Sección 3050.03 Reincidencia*.[5] Señalaron que, las multas impuestas fueron consecuencia de la inspección al establecimiento, y el incumplir con el Código de Rentas Internas. A su vez, sostuvieron que la multa de $7,000.00 impuesta por la violación a la Sección 3050.10 del Código de Rentas Internas, se debió a una reincidencia, debido a que, visitaron el establecimiento en tres ocasiones (24 de febrero de 2021, 29 de septiembre de 2021, y 4 de diciembre de 2021), y aún continuaba en incumplimiento. Por lo tanto, solicitaron que se sostuvieran las multas emitidas.

El 4 de mayo de 2023, inició la vista adjudicativa, en la cual comparecieron los agentes Mariano Rolón, Agnes Santiago y Damaris Ríos por parte del Negociado, y el Lcdo. José Gueits por parte del recurrente. Así las cosas, el 13 de junio de 2023, luego de evaluar la prueba testifical y documental, la Secretaría de Procedimiento Adjudicativo del Departamento de Hacienda

---

[5] *Contestación a Querella / Multa por Tercera Ocasión en Violación a la Sección 3050.03 Reincidencia*, anejo IV, págs. 12-14 del apéndice del recurso.

emitió una *Resolución*.[6] Mediante la cual, formuló las siguientes determinaciones de hechos:

1. El 24 de febrero de 2021, los Agentes de Rentas Internas visitaron y multaron por primera vez al Querellante, bajo la Sección 3050.03 del Código imponiéndole una multa administrativa por la cantidad de $500.00.

2. El 19 de septiembre de 2021, los Agentes de Rentas Internas visitaron y multaron por segunda vez al Querellante, bajo la Sección 3050.03 del Código imponiéndole una multa administrativa por la cantidad de $500.00, por reincidencia a la misma disposición infringida.

3. El 4 de diciembre de 2021, los Agentes de Rentas Internas visitaron y multaron al Querellante, bajo la Sección 3050.03 del Código imponiéndole una multa administrativa por la cantidad de $7,000.00 por reincidencia a la misma disposición infringida.

4. En el local comercial del Querellante habían, en el momento de la inspección, 4 máquinas de pasatiempo operadas por ficheros.

5. El Querellante no contaba con una licencia requerida en todo negocio, establecimiento o local donde operen cuatro (4) o más máquinas o artefactos de pasatiempo manipulados con monedas o fichas.

6. la Sangría encontrada por los agentes en la inspección, no poseía rotulación.

7. La Sangría es una bebida para la cual no se utiliza malta para su fabricación.

En consideración a lo anterior, el Juez Administrativo determinó que los Agentes de Rentas Internas lograron demostrar que el señor Román fue reincidente, al infringir la Sección 3050.03 del Código por tercera ocasión, por consiguiente, procedía la multa de $7,000.00. Sin embargo, dejó sin efecto las multas administrativas por la cantidad de $1,500.00 impuestas

---

[6] *Resolución*, anejo I, págs. 1-6 del apéndice del recurso.

a tenor con las Secciones 6045.03 (j)(1)(A), 6045.03 (j)(1)(B) y 5033.05(b) del Código.

Inconforme con dicha determinación, el 5 de julio de 2023, el recurrente presentó el recurso de revisión judicial. Mediante el cual, alegó los siguientes errores:

> Erró el Departamento de Hacienda al concluir que los equipos instalados en el negocio del peticionario están bajo la jurisdicción del Departamento de Hacienda y que por ende se necesita una licencia bajo la Sección 3050.03 del Código de Rentas Internas para operar cuatro (4) o más de los mismos.

> Erró el Departamento de Hacienda al no declarar Ha Lugar la querella radicada, por la Notificación de Multa ser emitida de manera deficiente en violación al Debido Proceso de Ley del Peticionario.

El 29 de agosto de 2023, las partes presentaron la transcripción de la prueba oral estipulada. El 25 de septiembre de 2023, el recurrente presentó un alegato suplementario. Por su parte, el 20 de octubre de 2023, la parte recurrida, presentó su alegato.

Por lo tanto, con el beneficio de la comparecencia de las partes y del análisis de la transcripción de la prueba oral procedemos a resolver.

**II.**

**-A-**

El derecho administrativo puertorriqueño requiere que, al revisar las determinaciones administrativas, auscultemos si sus decisiones fueron emitidas en virtud de los poderes delegados a la agencia y conforme a su política pública. *Capó Cruz v. Junta de Planificación,* 204 DPR 581, 590 (2020); *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016).

En esa encomienda, nos corresponde "otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas." *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019). Esto se debe a la presunción de legalidad y corrección que existe a favor de los procedimientos y determinaciones realizadas por los entes gubernativos. *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Ese axioma doctrinario responde "a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados." *Íd.*

A tono con lo anterior, para ejercer nuestra función revisora tenemos que escrutar los siguientes aspectos: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y, (3) si las conclusiones de derecho fueron correctas. *Capó Cruz v. Junta de Planificación*, supra; *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

Consecuentemente, no descartaremos el criterio del organismo administrativo, a menos, que nos encontremos con alguna de las situaciones previamente articuladas o la agencia haya actuado arbitraria, ilegal o irrazonablemente. *Capó Cruz v. Junta de Planificación*, supra; *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009). Con tales principios como norte, aunque exista más de una interpretación en cuanto a los sucesos fácticos, procederá validar la determinación articulada por la agencia. *Torres Rivera v. Policía de PR,* supra, pág. 628. Por ende, en materia de revisión judicial, solo cederá la deferencia que merecen las

agencias en las aplicaciones e interpretaciones de las leyes y reglamentos que administran cuando estemos frente a alguna de las mencionadas circunstancias. *Capó Cruz v. Junta de Planificación*, supra; *Rolón Martínez v. Supte. Policía*, supra.

La Sección 5.4 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado (LPAU), 3 LPRA sec. 2184, señala que "[t]oda persona a la que una agencia deniegue la concesión de una licencia [...] o gestión similar tendrá derecho a impugnar la determinación de la agencia por medio de un procedimiento adjudicativo." Precisamente, la adjudicación de una agencia, según definido por la LPAU, es el "pronunciamiento mediante el cual una agencia determina los derechos, [las] obligaciones o [los] privilegios que correspondan a la parte." Por ende, luego de la determinación final de la agencia, en cuanto a la solicitud de la licencia, entran en juego las disposiciones que regulan los requisitos y la forma de presentar un recurso de revisión ante el Tribunal de Apelaciones.

–B–

Por su parte, el *Código de Rentas Internas de Puerto Rico de 2011*, Ley Núm. 1-2011, según enmendada, 13 LPRA sec. 30011 *et seq*, es el cuerpo legal aplicable a los hechos de epígrafe, y el cual define las condiciones y requerimientos que imprimen legitimación a determinadas actividades comerciales. Específicamente, en su Sección 3050.03, dispone lo siguiente en cuanto a los derechos de licencia a negocios donde operen máquinas de pasatiempo:

Toda persona que opere un negocio, establecimiento o local donde operen cuatro (4) o más máquinas o artefactos de pasatiempo manipulados con monedas o ficha, o mesas de billar, deberá pagar un impuesto anual por concepto de derechos de licencia por cada negocio, establecimiento o local, por la cantidad de doscientos (200) dólares. La licencia deberá exhibirse en un lugar visible al público en general en el establecimiento, negocio o local para el cual se conceda la misma. Las exclusiones a que se refiere el apartado (d) de la Sección 3050.02 de este Subtítulo también aplicarán a los derechos de licencia que se establecen en esta sección. 13 LPRA sec. 31713.

La ejecución de una actividad comercial de las contempladas en el Código de Rentas Internas, *supra*, sin el pago de los derechos por concepto de licencia establecidos, está expresamente refrendada en la Sección 6042.14(b)(1)(A), 13 LPRA sec. 33144(b)(1)(A). Dicha disposición cataloga como delito menos grave emprender o continuar una industria, negocio u ocupación sujeto al pago de derechos por concepto de licencia, sin obtener o renovar la misma. No obstante, lo anterior no constituye la única consecuencia por dicha falta. Al respecto, la Sección 6030.21 del Código de Rentas Internas, *supra*, expresa:

(a) Toda persona que no cumpla con cualquier disposición de cualquier Subtítulo de este Código o de los reglamentos promulgados en virtud del mismo, o con cualquier otra ley o reglamento de Puerto Rico relacionado con este Código, o toda persona que ayude de cualquier modo a otra a violar las leyes y reglamentos relacionados, y para lo cual no se haya dispuesto específicamente de otra manera en cualquier Subtítulo de este Código, incurrirá en un delito menos grave.

(b) Multa Administrativa. — Además de la pena impuesta en el apartado (a) de esta Sección, el Secretario podrá imponer una multa administrativa que no excederá de quinientos (500) dólares por cada violación. En caso de reincidencia a la misma disposición infringida, la multa administrativa no será menor a cinco mil (5,000) dólares por cada infracción.

(c) En caso que la violación de cualquier disposición de este Código o de leyes o reglamentos relacionados sólo provea penalidades criminales, el Secretario podrá procesar el caso por la vía administrativa e imponer la multa dispuesta en el apartado (b) de esta Sección, o por ambas, a su discreción.

(d) Para propósitos de esta Sección, se entenderá que una persona ha reincidido en la misma violación a las disposiciones de este Código, cuando se incurre en la misma, o sustancialmente la misma actuación u omisión por la que se multó a la persona bajo el apartado (b) o se procesó judicialmente bajo el apartado (a), todo dentro de un periodo de diez (10) años. 13 LPRA sec. 33091

-C-

La Ley de Máquinas de Juegos de Azar, Ley Núm. 11 de 22 de agosto de 1933, para la fecha de la inspección del caso de autos, fue enmendada mediante la Ley Núm. 257-2018. Entre las enmiendas se encuentra el Artículo 132 de la Ley Núm. 257-2018, mediante el cual añadió una nueva Sección 3 a la Ley de Máquinas de Juegos de Azar. El inciso 17 de la Ley Núm. 11-1933, define máquina de juego electrónico de entretenimiento de adultos como:

> […] las máquinas que no contienen los mecanismos o dispositivos característicos de las Máquinas de Juegos de Azar según establecidos en esta Sección. Se excluyen de este término las máquinas de entretenimiento para uso exclusivo de niños y jóvenes, máquinas expendedoras de cigarrillos, comidas, refrescos o sellos de correo, máquina de cambio de monedas, teléfonos públicos y las máquinas tragamonedas en las salas de juego en los hoteles de turismo, autorizadas a tenor con la Ley Núm. 221 de 15 de mayo de 1948, según enmendada. Disponiéndose que el término "máquinas de entretenimiento para uso exclusivo de niños y jóvenes" se refiere a todas aquellas máquinas que no premian al jugador o que premian al jugador con juguetes o boletos para ser intercambiados por juguetes u otros premios que no constituyen dinero en efectivo y son entregados en los predios donde la máquina está localizada. 15 LPRA sec. 82.

Mientras que el inciso 18 define las máquinas de juegos de azar o tragamonedas como:

> […] las máquinas que usan un elemento de azar en la determinación de premios, contienen alguna forma de activación para iniciar el proceso de la apuesta, y hacen uso de una metodología adecuada para la entrega de resultados determinados. Disponiéndose, sin embargo, que no se refiere a las máquinas de entretenimiento de adultos, según definidas en esta Ley, siempre y cuando no contengan los mecanismos o dispositivos característicos de juegos de azar definidos en este párrafo. Las funciones de las Máquinas de Juegos de Azar pueden estar lógicamente separadas en partes múltiples o distribuidas a través de múltiples componentes físicos, pero deberán contener los siguientes mecanismos o dispositivos:
>
> i. un validador de billetes para aceptar apuestas que son registradas en un contador dentro de la máquina;
>
> ii. un dispositivo de bloqueo (knock-off switch) para borrar los créditos del contador una vez le son pagados al jugador ganador;
>
> iii. un dispositivo o mecanismo que haga a la máquina funcionar con total autonomía del jugador, por un ciclo o espacio de tiempo predeterminado y que provoca que el resultado del juego o de la operación que la máquina realiza sea decidido por suerte o al azar;
>
> iv. que cumpla con todos los requisitos tecnológicos establecidos en esta Ley. 15 LPRA sec. 82.

De otra parte, la Ley Núm. 257-2018, añadió la Sección 7, la cual dispone que "las disposiciones de la presente Ley son de aplicación únicamente a las Máquinas de Juegos de Azar o tragamonedas." 15 LPRA sec. 84c.

Finalmente, y conforme a la controversia del caso de autos, la Ley Núm. 257-2018, añadió la Sección 11 a la Ley de Juegos de Azar, mediante la cual establece lo siguiente:

> El costo de los derechos por cada licencia o renovación de licencia de dueño mayorista de Máquinas de Juegos de Azar tendrá un

cargo de mil quinientos (1,500) dólares por máquina. El cargo por licencia incluirá el costo del marbete. No podrán poseer los derechos de menos de cien (100) máquinas ni más de doscientos cincuenta (250) máquinas de juegos de azar, pagaderos a favor del Departamento de Hacienda anualmente. El Departamento de Hacienda transferirá trescientos (300) dólares por cada licencia a la División para la implementación de esta Ley. Ningún individuo, entidad o corporación podrá ostentar más de doscientas cincuenta (250) máquinas de juegos de azar, por grupo de entidades relacionadas, según definido en la Sección 1010.05 de la Ley 1-2011, según enmendada, conocida como "Código de Rentas Internas para un Nuevo Puerto Rico", y, en caso de individuos, por todas sus actividades de industria o negocio.

El cargo por procesamiento de cada solicitud de licencia de dueño mayorista de máquinas de juegos de azar será por la cantidad de quinientos (500) dólares pagaderos a favor del Departamento de Hacienda. El cargo de procesamiento será acreditado al solicitante, cuando la misma sea aprobada por la División.

Todo Dueño de Negocio que pretenda instalar o colocar máquinas de juegos de azar en sus facilidades deberá solicitar una licencia de Dueño de Negocio en la División. La licencia será libre de costo por cada máquina localizada en el Negocio. La División proveerá al Dueño de Negocio una Licencia para exhibir en un lugar visible dentro del Negocio, que entre otra información, indique el nombre del Negocio, la dirección física y postal y la cantidad de máquinas autorizadas para operar en el mismo.

El costo de los derechos por cada Licencia o renovación de las Licencias del Fabricante, y del Distribuidor y Proveedor de Bienes y Servicios tendrá un cargo de tres mil (3,000) dólares cada dos (2) años, pagaderos a favor del Departamento de Hacienda. El Departamento de Hacienda transferirá la totalidad de estos derechos a la División para la implementación de esta Ley.

No se autoriza ningún cargo o arancel adicional bajo ningún concepto a lo dispuesto en esta Ley.

### III.

En el caso de autos, el señor Román alega que incidió el Departamento de Hacienda al determinar que las máquinas instaladas en su negocio necesitan la licencia bajo la Sección 3050.03 del Código de Rentas Internas. El recurrente esboza que, en el año 2018 fue enmendada la Ley de Juegos de Azar para autorizar la operación de máquinas de juegos de azar fuera de los casinos, e incluyó que se pagaría a la Comisión de Juegos del Estado Libre Asociado de Puerto Rico el costo por la licencia. Añadió que, la enmienda, no autoriza ningún otro cargo adicional. Por consiguiente, arguye que los equipos que tiene en su establecimiento, a la fecha de la inspección, eran máquinas de juegos de azar en ruta, bajo la jurisdicción de la Comisión de Juegos del ELA.

Por su parte, el Negociado manifiesta que los agentes que acudieron a realizar la inspección en el establecimiento expresaron que las máquinas que había eran tres (3) máquinas de entretenimiento con fichero y una (1) vellonera con fichero, para un total de cuatro (4) máquinas o artefactos de pasatiempo manipulados por monedas o fichas. Así pues, sostienen que el señor Román tenía la obligación de obtener una licencia de establecimiento o local que dispone la Sección 3050.03 del Código de Rentas Internas. De igual forma, arguyen que el recurrente no presentó prueba testifical ni documental que controvirtiera lo expresado por los agentes.

Conforme a la normativa antes expuesta, las argumentaciones de los testigos, y la prueba presentada, las máquinas del establecimiento del señor Román son máquinas de juego electrónico de entretenimiento de

adultos.[7] El día de la vista administrativa, el representante legal del recurrente le preguntó a los Agentes del Negociado sobre el tipo de máquinas que inspeccionaron e indicaron que eran de entretenimiento, con fichero. A su vez, el Agente Rolón indicó:

> […] La licencia de establecimiento donde operan cuatro (4) artefactos o más, operados por ficheros, no contempla el tipo de juego que se esté o los dispositivos que puedan hacerla legal o ilegal. Pueden ser máquinas de niños de jugar Pac-Man […], y si hay mas de tres (3) artefactos operados por ficheros, es requisito en la licencia al local, al establecimiento, a la estructura. […]

Por consiguiente, este tipo de máquina tiene como requisito la licencia de establecimiento o local, según dispone la Sección 3050.03 del Código de Rentas Internas. Así, tras analizar el señalamiento de error a la luz del derecho aplicable, resolvemos que no se cometió el error, y el señor Román incumplió con el Código de Rentas Internas.

Finalmente, en su recurso, el recurrente sostiene que erró el Departamento de Hacienda al denegar la querella, aun cuando fue deficiente la notificación de la multa. Expresa que, de la notificación de la multa no surge la cantidad ni el tipo de máquinas que supuestamente operaba en el establecimiento. Por lo que, la notificación defectuosa violó el debido proceso de ley, y procede dejar sin efecto la penalidad.

La Sección 3050.03 del Código de Rentas Internas, *supra*, establece los derechos de licencia a negocios donde operen máquinas de pasatiempo. En dicha sección, dispone que una persona que opere un local o establecimiento y tengan cuatro (4) o más máquinas o

---

[7] Véase, págs. 14-16 de la Transcripción de la Prueba Oral.

artefactos de pasatiempo manipulados con monedas o ficha, deberá pagar un impuesto anual por concepto de derechos de licencia.

Según surge del expediente, los Agentes del Negociado inspeccionaron, en varias ocasiones, el establecimiento del señor Román, y encontraron que había incurrido en violación a la Sección 3050.03 del Código de Rentas Internas al tener cuatro (4) máquinas de pasatiempo manipulados con monedas o fichas. Por violación a la precitada sección, le fue impuesta una multa por la cantidad de $7,000.00, a tenor con la Sección 6030.21 del mismo Código.

De los documentos que acompañan el recurso de revisión, se desprende una de las de multas emitidas por el Negociado al recurrente se debe a: "[e]l establecimiento o local donde operan cuatro o más máquinas o artefactos de pasatiempo manipulados con monedas o fichas, sin el pago de derechos de licencias – Sección 3050.03 del Código."[8] A su vez, reiteraron en la contestación a la querella, que la imposición de la multa se debía al incumplimiento de la Sección 3050.03 del Código.

Los organismos administrativos cuentan con el conocimiento experto de los asuntos que le son encomendados, por lo que sus decisiones merecen la mayor deferencia judicial. Por lo tanto, cuando se revisa una decisión administrativa, el criterio rector es la razonabilidad de la actuación de la agencia. A su vez, la revisión judicial de determinaciones administrativas ha de limitarse a evaluar si la agencia actuó de manera

---

[8] Véase, *Inspección de Negocio-Notificación de Violaciones y Multas Subtítulos C, E y F*, anejo II, págs. 7-8 del apéndice del recurso.

arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron.

Por lo tanto, concluimos que el recurrente no demostró que la determinación del Departamento de Hacienda haya sido irrazonable o fuera del marco de los poderes que le fueron delegados. La validación de las multas administrativas obedeció a los hechos probados ante el Departamento de Hacienda. En vista de ello, nos corresponde confirmar la *Resolución* recurrida.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** el dictamen recurrido.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones